UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GLACIER FISH COMPANY LLC,<br><br>Plaintiff,<br>v.<br><br>WILDERMAN<br>BECERRA-VALVERDE,<br><br>Defendant. | CASE NO. C17-1419JLR<br><br>ORDER DENYING MOTION TO DISMISS OR TO AMEND AND CONTINUE |

## I. INTRODUCTION

Before the court is Defendant Wilderman Becerra-Valverde's motion to dismiss Plaintiff Glacier Fish Company, LLC's ("Glacier Fish") complaint, or, in the alternative, to amend his answer to add counterclaims and continue the case. (Mot. (Dkt. # 14).) Glacier Fish opposes the motion to dismiss, but does not object to Mr. Becerra amending his answer. (*See* Resp. (Dkt. # 15) at 1.) Mr. Becerra filed a reply. (Reply (Dkt. # 18).) The court has considered the parties' submissions in support of and in opposition to the

ORDER - 1

motion, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court DENIES Mr. Becerra's motion.

## II. BACKGROUND

Glacier Fish is a Washington company that owns and operates fishing vessels. (Compl. (Dkt. # 1) ¶ 4; Resp. at 2.) In 2016, Mr. Becerra worked as a processor aboard one of Glacier Fish's vessels, the C/P NORTHERN GLACIER. (Compl. ¶ 6.) On September 20, 2016, while fishing in the waters off Alaska, Mr. Becerra was injured after being struck by a ladder on the C/P NORTHERN GLACIER. (*Id.* ¶¶ 7-8.) When the vessel returned to port, Glacier Fish purchased Mr. Becerra a plane ticket to return to his home in Washington. (*Id.* ¶¶ 9-10.)

On September 23, 2016, Mr. Becerra visited a medical provider in Seattle who diagnosed him with a lumbar contusion with hematoma and abrasion, a lumbar strain, and left elbow and left leg contusions. (*Id.* ¶ 10.) According to Glacier Fish, the medical provider stated that Mr. Becerra "should be at maximum medical improvement within a month." (*Id.*)

Over the next year, Mr. Becerra complained of significant medical ailments, including pain, numbness, and weakness in his back, neck, and on the left side of his body. (*See id.* ¶¶ 10-46.) Mr. Becerra also presented to doctors with sharp pain near his heart, lightheadedness, shortness of breath, heart palpitations, headaches, nausea, lack of

---

[1] Neither party requests oral argument on the motion (*see* Mot. at 1; Resp. at 1), and the court finds oral argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

ORDER - 2

sleep, left-sided facial numbness, an inability to speak, and a loss of balance. (*See id.* ¶¶ 24-27, 30, 35, 39, 43, 46.) As a result of these issues, Mr. Becerra received treatment from numerous medical providers, including at least two physical therapists, a chiropractor, a neurologist, two cardiologists, an electrodiagnostic medicine specialist, an orthopedist, a spine and sports medicine specialist, a physiatrist, and at least six emergency room visits. (*Id.* ¶¶ 10-46.) These providers performed a multitude of examinations on Mr. Becerra, all of which yielded normal or unremarkable results. (*See, e.g., id.* ¶¶ 13, 24-27.) According to Glacier Fish, many of Mr. Becerra's providers noted that he exhibited "symptom magnification, disproportional pain responses" and "significant muscle guarding and self-limiting behaviors," and that his "subjective complaints were out of proportion with [his doctors'] objective findings." (*See, e.g.,* ¶¶ 13, 17, 31.) On June 26, 2017, Mr. Becerra received an independent medical examination from physiatrist Dennis Chong, M.D. (*Id.* ¶ 44.) Dr. Chong found that Mr. Becerra reached maximum medical improvement with respect to his vessel-related injuries. (*Id.*)

Since Mr. Becerra returned home on September 23, 2016, Glacier Fish has paid Mr. Becerra's full seaman benefits, including $35.00 per day in maintenance and all of his medical costs. (*Id.* ¶¶ 47, 52; *see also id.* ¶ 49, Ex. A (spreadsheet summarizing the maintenance and cure that Glacier Fish has paid); *but see* Answer (Dkt. # 7) ¶¶ 47, 52 (Mr. Becerra claiming that Glacier Fish has not paid "mileage reimbursement for his travel to and from medical appointments").)

//

On September 20, 2017, Glacier Fish brought this declaratory judgment action, seeking an order declaring that Mr. Becerra is no longer entitled to maintenance and cure from Glacier Fish as a result of the September 20, 2016, incident. (*See* Compl. at 13; *see also* Resp. at 4.) Since this suit was filed, the parties have exchanged initial disclosures and agreed to a discovery plan. (Resp. at 4; *see also* JSR (Dkt. # 10).) Mr. Becerra has filed an answer with affirmative defenses. (*See* Answer at 5.) In addition, Glacier Fish served, and Mr. Becerra responded to, written discovery, and the parties have engaged in five discovery conferences. (Resp. at 4.) The parties also exchanged expert disclosures. (*Id.*) Trial is scheduled for March 11, 2019. (*See* Sched. Order (Dkt. # 12) at 1.)

On September 12, 2018—almost one year after this case was initiated—Mr. Becerra filed suit against Glacier Fish in King County Superior Court, claiming Jones Act negligence, unseaworthiness, and maintenance and cure. (*See* Mot. at 2, Ex. 1 at 5-12 (state court summons and complaint).) That same day, Mr. Becerra filed the present motion to dismiss or, in the alternative, amend his answer to add the Jones Act negligence and unseaworthiness counterclaims and continue the case. (Mot. at 1, 3-4.) Mr. Becerra contends that this action should be dismissed in deference to his state court action. (*Id.* at 1-3.) Glacier Fish opposes Mr. Becerra's motion to dismiss, but does not object to Mr. Becerra amending his answer to add the counterclaims. (*See* Resp. at 1.) The court now addresses the motion.

//

//

//

## III. ANALYSIS

### A. Declaratory Judgment Action

A federal district court has discretion whether to hear a declaratory judgment action. *See* 28 U.S.C. § 2201(a) (the court "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.") (emphasis added); *see also Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222-23 (9th Cir. 1998). Generally, "when a state court action is pending presenting the same issue of state law as is presented in a federal declaratory suit, there exists a presumption that the entire suit should be heard in state court." *First Shipmor Assocs. v. Musa*, No. 92-4675 FMS, 1993 WL 181382, at *1 (N.D. Cal. May 26, 1993) (citing *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1370 (9th Cir. 1991)). But there is "no per se rule against the district court exercising its jurisdiction to resolve [a] . . . dispute when the underlying liability suit is pending in state court." *Westar Marine Servs., Inc. v. Bayly*, No. C 09-05489 RS, 2010 WL 1881093, at *1 (N.D. Cal. May 10, 2010) (quoting *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 145 (9th Cir. 1994)). Rather, a district court should weigh "concerns of judicial administration, comity, and fairness" when deciding whether to exercise its jurisdiction under the Declaratory Judgment Act or defer to a parallel state court action. *Camberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991); *see also Coastal Alaska Premier Seafoods, LLC v. Redfern*, No. C18-0345JCC, 2018 WL 2216191, at *1 (W.D. Wash. May 15, 2018) ("In a declaratory judgment action, the Court has discretion to stay a matter that is also pending in a state court proceeding.") (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). To

ORDER - 5

effectuate the concerns of judicial administration, comity, and fairness, district courts should "avoid endorsing a party's forum shopping, needless determinations of state law, duplicative litigation, piecemeal resolution of disputes, procedural fencing, and entanglement of the state and federal courts." *See Scandies Rose Fishing Co., LLC v. Pagh*, No. C18-0672RSM, 2018 WL 5276587, at *1 (W.D. Wash. Oct. 24, 2018) (citations omitted).

Added to these considerations in this case is the Savings to Suitors Clause, 28 U.S.C. § 1333. This clause preserves for a civil admiralty or maritime plaintiff his choice of common law remedies. *See* 28 U.S.C. § 1333; *see also Belle Pass Towing Corp. v. Cheramie*, 763 F. Supp. 1348, 1354 (E.D. La. 1991) ("[T]he Saving to Suitors Clause is intended to preserve common law *remedies*, not to guarantee a plaintiff a particular forum."). Courts have interpreted this clause to allow a plaintiff to choose to proceed with his admiralty or maritime action in state court with a jury or in federal court. *See Ocean Alaska, LLC v. Hutchinson*, No. C07-0294JLR, 2008 WL 3103394, at *1 (W.D. Wash. Aug. 4, 2008) (citing *Belle Pass*, 763 F. Supp. at 1354).

Mr. Becerra relies on *Belle Pass Towing Corp. v. Cheramie* for the proposition that, in cases involving admiralty or maritime law, a federal declaratory judgment action should be dismissed in favor of a state court action, even if the state action was filed later. (Mot. at 2 (discussing *Belle Pass*, 763 F. Supp. 1348).) *Belle Pass* held that "absent bad faith on the part of the defendant-employee in the federal court, a properly filed Jones Act suit *requires* dismissal of a declaratory judgment action which arises out of the same set of facts." 763 F. Supp. at 1355. According to *Belle Pass*, "this result is mandated

because of the nature of the Saving to Suitors Clause, and because of the possible preclusive effects maintaining such an action would have on a suitor's Jones Act case in another court." *Id.* Thus, in deciding whether to dismiss a federal admiralty or maritime declaratory action, *Belle Pass* instructs the court to consider if the state court action is based on the same facts as the federal declaratory judgment action, and whether resolving the federal action could have any preclusive effects. *Id.* But, even if the court answers those questions in the affirmative, the court need not dismiss the federal declaratory judgment action if the federal defendant filed the state court action in bad faith. *Id.*

Although *Belle Pass* is not binding precedent, this court has cited it with approval. *See Ocean Alaska*, 2008 WL 3103394, at *2 ("The court is persuaded by the reasoning of the line of case coming from the Fifth Circuit, including *Belle Pass* . . . ."). However, this court has also noted that "*Belle Pass*'s statement that dismissal is required under certain circumstances may go too far." *Id.* (citing *Lady Deborah, Inc. v. Ware*, 855 F. Supp. 871, 875 (E.D. Va. 1994)). Thus, even though *Belle Pass* provides a framework by which to determine if dismissal is appropriate, the ultimate decision whether to hear or dismiss a declaratory judgment action remains in the district court's discretion. *See Scandies Rose Fishing*, 2018 WL 5276587, at *2.

The court will therefore first weigh the general declaratory judgment considerations, *see Scandies Rose Fishing*, 2018 WL 5276587, at *1, and then consider *Belle Pass*'s impact on this case.

//

//

ORDER - 7

1. General Declaratory Judgment Considerations

Judicial administration, comity, and fairness weigh in favor of not dismissing Glacier Fish's declaratory judgment action. *Camberlain*, 931 F.2d at 1367. In this case, the most relevant factors for achieving these goals are: (1) not endorsing a party's forum shopping; (2) avoiding needless determinations of state law; (3) avoiding duplicative litigation; and (4) avoiding the piecemeal resolution of disputes. *See Scandies Rose Fishing*, 2018 WL 5276587, at *1. The court will discuss each in turn.

First, Glacier Fish's action is not an attempt at forum shopping. Glacier Fish did not race to the courthouse to achieve a federal forum; rather, Glacier Fish paid Mr. Becerra's seaman benefits for a year, filing this action only after a doctor found that Mr. Becerra had reached maximum medical improvement with respect to his vessel-related injuries. (*See* Compl. ¶ 44.). If anyone is guilty of forum shopping, it is Mr. Becerra, who filed his state court action almost one year after Glacier Fish brought this federal case. Courts have found that a much shorter delay evidences forum shopping by the federal defendant seaman. *See, e.g., Musa*, 1993 WL 181382, at *2 (finding that a state court action filed five months after the federal declaratory judgment action demonstrated forum shopping by the federal defendant seaman); *Fourth Shipmor Assocs. v. Lee*, No. CIV-S95-1856GEBJFM, 1996 WL 468753, at *2 (E.D. Cal. Jan. 4, 1996) (determining that plaintiff was not guilty of forum shopping where the defendant filed a state court action after the plaintiff initiated the federal declaratory judgment suit); *see also Bayly*, 2010 WL 1881093, at *1 (finding that neither party was guilty of forum shopping where the federal and state complaints were filed one day apart). Mr. Becerra claims this delay

was because his "claims were not ripe for litigation until recently." (Reply at 2.) But Mr. Becerra provides no law for this proposition; nor does he explain why he waited over a year to raise this argument. (*See generally id.*)

Second, the court's disposition of Glacier Fish's case would not involve a needless determination of state law. The law governing Glacier Fish's maintenance and cure declaratory judgment action is federal maritime law, so there is no issue of state law that the court should avoid. *See Lee*, 1996 WL 468753, at *2.

As to the third factor, duplicative litigation is a risk because Mr. Becerra's state court complaint poses similar issues to Glacier Fish's federal action. On top of claims for Jones Act negligence and unseaworthiness, Mr. Becerra claims maintenance and cure in his state court action, placing in controversy issues that will arise in Glacier Fish's federal action. The parties admit, and the court agrees, that both cases will involve a determination of Glacier Fish's obligation to pay maintenance and cure for Mr. Becerra's injuries. (*See* Mot. at 2; Resp. at 8-9.) Thus, any findings made in this court could have a preclusive effect on Mr. Becerra's state court action. *See Bayly*, 2010 WL 1881093, at *2. However, the cases are not identical. Glacier Fish's maintenance and cure claim centers on Mr. Becerra, and asks the court to determine if and when he reached maximum medical improvement such that Glacier Fish's duty to pay ceased. *See Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962) (citing *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 531-32 (1938)). In contrast, Mr. Becerra's Jones Act negligence and unseaworthiness claims center on Glacier Fish, and seek to determine if Glacier Fish acted negligently and whether the C/P NORTHERN GLACIER was unseaworthy. *See Havens v. F/T Polar*

ORDER - 9

*Mist*, 996 F.2d 215, 217-19 (9th Cir. 1993). There is obvious overlap between Glacier Fish's federal action and Mr. Becerra's maintenance and cure claim in state court. But the overlap between the two cases is not absolute. *Cf. Musa*, 1993 WL 181382, at *2 (finding that the federal declaratory judgment case that was "confined to a single issue" of maintenance and cure will have "little duplication with the state action" for Jones Act negligence, unseaworthiness, and maintenance and cure).

Fourth, not dismissing this action will result in the piecemeal resolution of this dispute: the maintenance and cure claim would be heard in federal court, while the negligence and unseaworthiness claims would be heard in state court. Even if the court allows Mr. Becerra to amend his answer and add counterclaims, Glacier Fish requests that its declaratory judgment action be heard by bench trial on March 11, 2019, and Mr. Becerra's counterclaims be tried in front of a jury at a later date. (*See* Resp. at 5 n.3.) Thus, inviting Mr. Becerra's counterclaims into federal court will still result in a piecemeal resolution. Alternatively, Mr. Becerra requests that the court hear all the claims together, but postpone the trial date because he needs to conduct discovery on the Jones Act negligence and unseaworthiness claims. (*See* Mot. at 3-4.) But due to the court's docket, accommodating Mr. Becerra's request would require postponing any resolution to around a year after the current March 11, 2019, trial date. According to Glacier Fish, trial is scheduled in the state court action for September 9, 2019 (*see* Resp. at 10), which is much sooner than this court could entertain Mr. Becerra's claims, whether they were combined with Glacier Fish's declaratory judgment action or heard separately.

In sum, the court recognizes that maintaining Glacier Fish's declaratory judgment action will result in some duplicative litigation and a piecemeal resolution of this dispute. However, this is largely a consequence of Mr. Becerra waiting almost one year before filing his state court action and the instant motion to dismiss. Had Mr. Becerra filed his state court action sooner, it would have weighed heavily in favor of a dismissal, or at least a stay, of Glacier Fish's declaratory judgment action. *See, e.g., Scandies Rose Fishing*, 2018 WL 5276587, at *1-3 (staying federal declaratory judgment action in favor of state action where state action was filed within one month of federal claim); *Coastal Alaska Premier Seafoods*, 2018 WL 2216191, at *1-2 (staying federal declaratory judgment action that was filed five days prior to the filing of the state court maritime case); *Ocean Alaska*, 2008 WL 3103394, at *1-3 (staying federal declaratory judgment action that was initiated two months before state court maritime case was filed). But he did not. To the contrary, he actively participated in the federal litigation for almost a year. (*See* Resp. at 4.)

In sum, the four factors the court discussed are a means for considering the ultimate goals of proper judicial administration, comity, and fairness. *See Camberlain*, 931 F.2d at 1367. On fairness alone, the court finds that it should not dismiss Glacier Fish's case. Fairness requires a timely resolution of Glacier Fish's claim, especially because Glacier Fish has represented that it will continue to pay Mr. Becerra maintenance and cure until this matter is resolved. (*See* Compl. ¶ 52.) When Glacier Fish filed its complaint on September 20, 2017, its maintenance and cure payments had already amounted to $77,674.42. (*Id.* ¶ 49, Ex. A at 7.) Mr. Becerra then waited almost a year to

ORDER - 11

move to dismiss this case in favor of a state court action that is scheduled for trial well after this court's trial date. On balance, the court finds that maintaining Glacier Fish's declaratory judgment action best achieves the goals of judicial administration, comity, and fairness.

2. *Belle Pass*'s Impact

Again, *Belle Pass* instructs the court to consider if the state court action is based on the same facts as the federal declaratory judgment action, and whether resolving the federal action could have any preclusive effects. 763 F. Supp. at 1355. As discussed, both of these factors are met. *See supra* § III.A.1; (*see also* Mot. at 2; Resp. at 8-9; Reply at 2 (parties agreeing that first two *Belle Pass* factors are met).) Thus, the court considers whether Mr. Becerra filed his state court action in "bad faith" such that the federal action should not be dismissed in favor of his state court action. *See Belle Pass*, 763 F. Supp. at 1355; (*see also* Resp. at 10; Reply at 2-3.) Even under this standard, which this court has held "may go too far" in requiring dismissal, *see Ocean Alaska*, 2008 WL 3103394, at *2, the court finds that it should not dismiss Glacier Fish's declaratory judgment action because Mr. Becerra exhibited bad faith in filing his state court action.

*Belle Pass* does not define "bad faith," *see* 763 F. Supp. at 1355, but other courts have attempted to explain what it means in this context:

> [A]fter the weighing of all of the relevant factors, the decision to hear or dismiss a declaratory judgment action remains in the discretion of the district court. Arguably, the *Belle Pass Towing* court accounts for this discretion by refusing to dismiss cases involving "bad faith on the part of the defendant-employee [seaman] in the federal court." Indeed, many of the conceivable reasons for refusing to dismiss a declaratory judgment action could be cast as "bad faith" on the part of the seaman. For example, a California district

ORDER - 12

> court explicitly disagreed with *Belle Pass Towing* when it refused to dismiss a declaratory judgment action before it. But that court could have just as simply fit its facts into the bad faith exception.

*Ware*, 855 F. Supp. at 875 (internal citations omitted). Thus, rather than adhere to a strict definition of bad faith, courts should "continue to exercise their discretion based on the facts presented . . . to resolve the inherent tension between the seaman and the employer's rights raised by these actions." *Id.* at 876.

In this case, Mr. Becerra waited almost one year before filing in state court. *See supra* § III.A.1. The parties did not provide the court with a maritime case that found dismissal of a federal declaratory judgment action appropriate when the defendant delayed filing the state court action for almost a year. Nor could the court find one. Conversely, a court determined that five months was too long to wait to file a state court action. *See Musa*, 1993 WL 181382, at *2. Moreover, the parties have been actively litigating this case. Mr. Becerra argues the opposite, pointing out that only one deposition had occurred by the time he filed the present motion. (Mot. at 2.) But in reality, over the past year Mr. Becerra has filed an answer with affirmative defenses, exchanged initial disclosures, responded to written discovery, exchanged expert disclosures, and engaged in five discovery conferences. (Resp. at 4.) Glacier Fish had also scheduled additional depositions before Mr. Becerra filed his motion. (*Id.*) In addition, amidst Mr. Becerra's case participation, he never challenged jurisdiction or venue, or even raised these issues as affirmative defenses. (*Id.*; Answer at 5; *see also* Dkt.) On these facts, the court finds that, under *Belle Pass*, Mr. Becerra acted in bad faith when he filed his state court action.

ORDER - 13

Therefore, when considering both the general concerns of judicial administration, comity, and fairness, as well as *Belle Pass*'s instruction that a court is not required to dismiss a federal declaratory judgment action when the defendant seaman exhibits bad faith, the court finds that dismissal of Glacier Fish's case is inappropriate. The court therefore DENIES Mr. Becerra's motion to dismiss.

B.  **Leave to Amend and Continue**

Mr. Becerra requests that, if the court denies his motion to dismiss, that it grant him leave to amend his answer to add counterclaims of Jones Act negligence and unseaworthiness, and to continue this case. (*See* Mot. at 3-4.) Glacier Fish does not object to Mr. Becerra's amending his answer, but requests that the court hear its maintenance and cure claim by bench trial on March 11, 2019, and try the counterclaims in front of a jury at a later date. (*See* Resp. at 5 n.3.) Mr. Becerra insists on all of the claims being heard together, and requests that the court alter its case schedule accordingly. (*See* Reply at 4-5.)

Federal Rule of Civil Procedure 15(a) provides that, after an initial period for amendments as of right, pleadings may be amended only with the opposing party's written consent or by leave of the court. Fed. R. Civ. P. 15(a). Generally, "the court should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). The court ordinarily considers five factors when determining whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment," and (5) whether the pleadings have previously been amended. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). The court need not

consider all of these factors in each case. *Atkins v. Astrue*, No. C 10-0180 PJH, 2011 WL 1335607, at *3 (N.D. Cal. Apr. 7, 2011).

The court denies Mr. Becerra leave to amend, relying on factors (2) and (3). Mr. Becerra waited almost a year to request leave to amend his answer. That is undue delay. Further, allowing Mr. Becerra to amend his answer and continue this case would unfairly prejudice Glacier Fish. Glacier Fish's lack of objection to Mr. Becerra's motion for leave to amend appears contingent on the court hearing the maintenance and cure claims separately on March 11, 2019. (*See* Resp. at 5 n.3.) But Mr. Becerra requests that all the claims be heard together and rescheduled for a later date. (*See* Reply at 4-5.) As the court explained, hearing the claims together would require the court to delay trial for a year. All the while, Glacier Fish will be paying Mr. Becerra maintenance and cure. (*See* Compl. ¶ 52.) Thus, granting leave to amend is unfairly prejudicial to Glacier Fish. The court also notes that, even in denying Mr. Becerra leave to amend, Mr. Becerra retains his desired forum and remedy for his Jones Act negligence and unseaworthiness claims. *See* 28 U.S.C. § 1333. Further, these claims will be tried in state court on September 9, 2019 (*see* Resp. at 10), which is well before this court could hear these claims.

The court therefore DENIES Mr. Becerra leave to amend his answer to add counterclaims and continue the case.

//
//
//
//

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Mr. Becerra's motion to dismiss Glacier Fish's complaint, or, in the alternative, to amend his answer to add counterclaims and continue the case. (Dkt. # 14.)

Dated this 7th day of November, 2018.

JAMES L. ROBART
United States District Judge